820 So.2d 398 (2002)
Domingo CERRA, Appellant,
v.
Margarita CERRA, Appellee.
No. 5D01-2856.
District Court of Appeal of Florida, Fifth District.
May 31, 2002.
Rehearing Denied July 11, 2002.
*399 Michael W. Jones of Michael W. Jones, P. A., Gainesville, for Appellant.
Ann Melinda Craggs and M. Thomas Bond of Bond, Arnett, Phelan, Smith & Craggs, P. A., Ocala, for Appellee.
ORFINGER, R. B., J.
Domingo Cerra ("Domingo"), the former husband, appeals a final judgment of dissolution of marriage. Domingo challenges the amount of permanent alimony awarded to his former wife, Margarita Cerra ("Margarita"), and the trial court's failure to impute income to her.
The parties were married in 1976. In the early years of the marriage, Domingo and Margarita resided in Mexico and Puerto Rico while Domingo attended medical school. They had two children, one of whom is still a minor.
After Domingo completed medical school, they moved to Gainesville where Domingo completed his residency and worked as an assistant professor at the University of Florida. Margarita taught preschool on a full-time basis. The parties jointly supported the family financially.
In July, 1986, the family moved to Ocala where Domingo began practicing as a psychiatrist. Shortly thereafter, the parties' second child, a son, was born.[1] In 1990, Domingo established his own psychiatric practice. Margarita volunteered at the Cornerstone School so her children would receive a tuition reduction. When the parties' son entered preschool, Margarita became employed in a part-time preschool teaching position at Cornerstone, earning approximately $5,000 per year. After the dissolution proceedings began, Margarita started teaching full-time at Cornerstone, earning about $20,000 per year. In 2000, Domingo earned approximately $150,000. *400 Both parties are in good health, and are in their late forties.
After a trial on the petition for dissolution of marriage, the trial court entered a final judgment dissolving the marriage and awarding Margarita permanent alimony in the amount of $3,000 per month. Domingo argues that the trial court erred by not imputing income to Margarita, claiming that she has an earning capacity of between $28,000-$33,000 per year, instead of the $20,000 that she alleges.[2]
In Vitalis v. Vitalis, 799 So.2d 1127 (Fla. 5th DCA 2001), this court said:
In a dissolution proceeding, the trial court possess broad discretion to do equity between the parties. Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla. 1980); Doyle v. Doyle, 789 So.2d 499, 501 (Fla. 5th DCA 2001). The standard of review is whether the trial court abused its discretion. Canakaris, 382 So.2d at 1202-03. In reviewing a dissolution judgment, this court looks at the judgment as a whole in determining whether the trial court abused its discretion. Hamlet v. Hamlet, 583 So.2d 654, 657 (Fla.1991). "It is not the function of the appellate court to substitute its judgment for that of the trial court through re-evaluation of the evidence. Rather, the test is whether the judgment of the trial court is supported by competent evidence." Deakyne v. Deakyne, 460 So.2d 582, 583 (Fla. 5th DCA 1984) (citing Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983)).
Id. at 1130.
Domingo asserts that Margarita was voluntarily underemployed, warranting imputation of income to her for purposes of determining child support and alimony. We disagree. Margarita was working part-time when the dissolution proceedings began. Thereafter, she began working full-time as a preschool teacher. Instead of voluntarily becoming underemployed, Margarita sought and obtained full-time employment. Margarita's present employment comports with her "recent work history; occupational qualifications, and the prevailing earnings level in the community." § 61.30(2)(b), Fla. Stat. (2000).[3]See Smith v. Smith, 737 So.2d 641, 645 (Fla. 1st DCA 1999).
Margarita now earns more than she was earning before the dissolution proceedings began. She "voluntarily" sought additional income through full-time instead of part-time employment. The trial court properly and carefully considered Margarita's recent work history and occupational qualifications before determining that income should not be imputed to her. There is no requirement that a person be employed earning the highest wages available in his *401 or her field. See Daniel v. Moats, 718 So.2d 949, 949-50 (Fla. 5th DCA 1998). Given the trial court's broad discretion in this matter, we find no error in the court's decision not to impute income to Margarita. See Pribble v. Pribble, 800 So.2d 743, 746 (Fla. 5th DCA 2001) (holding that in determining the amount of income to impute to a party, the court does not necessarily have to impute the amount of income the party would earn by his or her best efforts to gain employment equal to the parties' capabilities).
Domingo also contends that the trial court erred in its award of permanent alimony. He submits that the award of permanent alimony should either be reversed or the amount decreased. He asserts that the equitable distribution award, coupled with child support and Margarita's earning capacity, eliminates the need for permanent alimony. In response, Margarita asserts that an award of permanent alimony in a twenty-four year marriage is warranted because she works as a preschool teacher earning only 13% of her psychiatrist husband's income.
Because the parties were married for 24 years, a rebuttable presumption of entitlement to permanent alimony exists. See Hill v. Hooten, 776 So.2d 1004, 1007 (Fla. 5th DCA 2001). Although this presumption is rebuttable, neither age nor a spouse's ability to earn some income alone rebuts the presumption. See id. As we explained in Young v. Young, 677 So.2d 1301 (Fla. 5th DCA 1996):
A spouse's age is not a valid basis to deny permanent alimony absent evidence that the spouse's youth would allow her or him to earn income sufficient to support a life-style consistent with that enjoyed during the marriage.
Id. at 1305.
We further stated:
For purposes of determining entitlement to alimony, a spouse is not self-supporting just because he or she has a job and income. To the extent possible, a divorced spouse is entitled to live in a manner reasonably commensurate with the standard established during the course of a marriage, notwithstanding that the spouse is employed.
Id. at 1306.
The "[d]isparate earning capacity of the parties is `a significant factor' in deciding whether permanent ... alimony is warranted." Id. Here, the trial court considered all the factors enumerated in section 61.08, Florida Statutes (2000), and provided a detailed order supporting its award of permanent alimony. We find no abuse of discretion. Finding no merit in the other issues raised, the final judgment is affirmed.
AFFIRMED.
COBB and PALMER, JJ., concur.
NOTES
[1] The parties' son is developmentally delayed and has special educational needs.
[2] At trial, Domingo presented the testimony of Scott Hackmyer, the principal of Howard Middle School in Marion County. Mr. Hackmyer testified about the need for teachers in Marion County and the pay scale and benefits for teachers in his system. He testified that Margarita could get a temporary teacher's certificate and obtain a permanent certificate within a year, after taking additional classes.
[3] Section 61.30(2)(b) provides:

(b) Income ... shall be imputed to an unemployed or underemployed parent when such employment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community; however, the court may refuse to impute income to a primary residential parent if the court finds it necessary for the parent to stay home with the child.
§ 61.30(2)(b), Fla. Stat. (2000).