IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

ROBIN HENNINGSEN BRUCE,

      Appellant,

 v.                                 Case No.  5D15-2136
                                       **CORRECTED**

JEROME BOYD BRUCE,

      Appellee.

_____/

Opinion filed February 2, 2018

Appeal from the Circuit Court
for Osceola County,
C. Jeffrey Arnold and
Elaine A. Barbour, Judges.

Christine J. Lomas, of LomasLaw,
P.A., Winter Park, and Heather Morcroft,
Winter Park, for Appellant.

Christopher J. Shipley, of Shipley Law Firm,
Mount Dora, for Appellee.

ORFINGER, J.

      Robin H. Bruce, the former wife, appeals the trial court's final judgment of

dissolution of marriage, alleging the trial court erred by failing to award alimony and in

determining school designation as well as refusing to enforce a purported marital

settlement agreement.  We affirm without discussion the trial court's determination that

the parties did not enter into a binding marital settlement agreement.  However, we find

merit in the former wife's remaining two issues.

The former wife and the former husband, Jerome Boyd Bruce, were married for twenty years before separating. They had one minor child at the time the court entered the final judgment. During the marriage, the former wife was the primary caretaker of the parties' children and usually worked in customer service at night and on weekends, earning $10,000-$15,000 per year. The former wife worked these hours because the former husband wanted her to be at home with their three children. She has a college degree, but testified she would need retraining, as her teaching certification was no longer valid. The former wife is hearing impaired, has permanent arthritis, and was, at the time of trial, on medication for a broken ankle, which required a plate and seven screws. She is also a three-time cancer survivor and has herniated discs that are fused as a result of a bike accident.

The former husband is the regional branch manager of a library in Lake County. From 2009 until September 2012, he earned $75,400 annually, but since October 1, 2012, he has been earning $71,635 annually. The former husband testified that the former wife moved out of the marital home and into a rental residence with her new boyfriend because it was cheaper to live with him. The former wife confirmed that she moved out of the marital home in July 2012, explaining that after she broke her ankle, she could no longer afford to take care of the marital home or herself. However, she denied that she was in a supportive relationship with her boyfriend. She admitted that she leases a two-bedroom ($1,145 per month) house with her boyfriend, but indicated she owes him back rent that she was unable to pay due to her injury. She also testified that she pays her own car insurance, gas, and for her son's clothing, along with the water and phone bills, groceries, and pool maintenance. She pays the electric bill, which is in the boyfriend's name, in

exchange for the boyfriend covering her part of the rent. The former wife and her boyfriend have no joint bank accounts, own no joint real or personal property, and have no joint investments.

In its final judgment, the trial court found that the former wife had the need for alimony and the former husband had the ability to pay alimony. However, it refused to award alimony because the former "wife has changed the nature of the request for alimony by entering into a 'supportive relationship' since separation." The former wife challenges the trial court's refusal to award her ongoing alimony because she was in a supportive relationship.

The evidence was undisputed that at the time of the final hearing, the former husband was earning $71,000 annually, while the former wife's income was much lower— between $10,000 and $15,000 annually. And, although the trial court found that the former wife has "two college degrees, skills and reasonably good health," it failed to impute any income to her. The evidence was also undisputed that the parties had been married for twenty years. A parties' twenty-year marriage is considered "long-term," raising a rebuttable presumption of entitlement to permanent alimony. See Alcantara v. Alcantara, 15 So. 3d 844, 845-47 (Fla. 3d DCA 2009); see also § 61.08(4), Fla. Stat. (2015) ("For purposes of determining alimony, there is a rebuttable presumption that a . . . long-term marriage is a marriage having a duration of 17 years or greater."). However, the trial court's final judgment does not mention the long-term marriage presumption.

A review of a trial court's decision under section 61.08, Florida's alimony statute, is a mixed question of law and fact that requires a mixed standard of review. Gregory v. Gregory, 128 So. 3d 926, 927 (Fla. 5th DCA 2013). We conclude it was not error for the

trial court to consider the former wife's allegedly supportive relationship because section 61.08(2)(j), Florida Statutes (2015), permits the trial court to consider "[a]ny other factor necessary to do equity and justice between the parties" when determining a proper award of alimony, and that consideration is dependent upon the circumstances of each particular case.  See generally Keyser v. Keyser, 204 So. 3d 159, 161-62 (Fla. 1st DCA 2016) (considering evidence regarding alleged supportive relationship during appeal of final judgment of dissolution).  However, the trial court was required to make findings regarding the factors outlined in section 61.08(2) before concluding that the former wife was not entitled to alimony.[1]

"A supportive relationship is a relationship that 'takes the financial place of a marriage and necessarily decreases the need of the obligee.'"  Overton v. Overton, 34 So. 3d 759, 761 (Fla. 1st DCA 2010) (quoting French v. French, 4 So. 3d 5, 6 (Fla. 4th DCA 2009)).  Such support is equivalent to a marriage and allows a reduction in alimony. Overton, 34 So. 3d at 761; French, 4 So. 3d at 8.  However, financial support alone does not define a supportive relationship.  Overton, 34 So. 3d at 761; see Linstroth v. Dorgan, 2 So. 3d 305, 306 (Fla. 4th DCA 2008); Buxton v. Buxton, 963 So. 2d 950, 955 (Fla. 2d DCA 2007).  Instead, the length and nature of the live-in relationship are also significant factors for the trial court to consider.  Only those relationships that are substantially equivalent to a remarriage warrant a reduction of alimony.  Buxton, 963 So. 2d at 955.

---

[1] Florida's supportive relationship statute, section 61.14(1)(b), Florida Statutes (201**5**), is not applicable because on its plain terms, it applies only after an award of alimony and the entry of a final judgment dissolving the marriage.  See King v. King, 82 So. 3d 1124 (Fla. 2d DCA 2012).  However, the factors found in section 61.14(1)(b) provide the trial court with a useful framework to determine if, and to what extent, a supportive relationship exists between the former wife and her boyfriend.

Thus, if the court decides that a supportive relationship exists, it has the discretion to reduce or eliminate the alimony obligation under section 61.08(2). But this should be done with caution and only when the supportive relationship is equivalent to a marriage.

In the instant case, the trial court did not make any findings regarding the nature and extent of the former wife's supportive relationship, or how that relationship diminished her need, permanently, for alimony. On remand, if the trial court determines that the former wife is in a supportive relationship, it must determine how, and to what extent, that relationship mitigates the former wife's need for alimony. See Keyser, 204 So. 3d at 161-62 (holding that trial court abused discretion in denying wife's petition for alimony in divorce action where it was undisputed that husband earned $81,000 annually while wife's income was only $15,000 per year, no income was imputed to wife, there was scant evidence of how much money had been pooled in allegedly supportive relationship, parties' marriage was long-term, such that there was presumption in favor of permanent periodic alimony, and court did not make required factual findings as to whether wife needed alimony or whether husband had ability to pay alimony).

The former wife also contends that competent, substantial evidence did not support the court awarding the former husband the school designation. We review the trial court's judgment for an abuse of discretion. Schwieterman v. Schwieterman, 114 So. 3d 984, 987 (Fla. 5th DCA 2012); see Beharry v. Drake, 52 So. 3d 790, 793 (Fla. 5th DCA 2010) ("A trial court's custody or time sharing determination is reviewed under the abuse of discretion standard of review.").

Here, the parties entered into a parenting plan, but it was silent as to school designation, which both parties requested. At the time of the final hearing, the distance

5

between the child's school and the former wife's home was two miles, allowing the child to take the school bus to and from school. The former husband argued that he should receive the school designation as he is residing in the former marital home, and thus, his residence is more permanent as opposed to the former wife's rental residence. The trial court also designated the former husband as custodian for school designation purposes without explaining its reasoning.

Section 61.13(2)(b)3., Florida Statutes (2015), requires a parenting plan to contain a designation of residence for school attendance. The determination must be made based on "the best interests of the child." Schwieterman, 114 So. 3d at 987 (citing § 61.13(3), Fla. Stat. (2010)). The determination of the best interests of the child is made by evaluating more than twenty factors affecting the welfare and interests of the child. § 61.13(3), Fla. Stat. (2015). While the trial court is not required to address each factor independently, it must, at a minimum, find that its timesharing determination and school designation is in the best interests of the child. Neville v. McKibben, 227 So. 3d 1270, 1273 (Fla. 1st DCA 2017). This finding must either be stated on the record or set out in the order. Clark v. Clark, 825 So. 2d 1016, 1017 (Fla. 1st DCA 2002).

In the instant case, the record does not reflect that the trial court considered the factors listed in section 61.13 in its determination of school designation. Further, competent, substantial evidence does not support the trial court's award of school designation for the father. Although, admittedly, the parties presented scant evidence on this issue, that limited evidence favored the former wife.

In summary, we affirm the final judgment except as to the denial of permanent alimony and the school designation. On remand, the trial court shall reconsider these two

6

issues and take additional evidence, if necessary. In determining alimony, the court should make specific findings of fact as to all factors listed in section 61.08(2). In determining school designation, the trial court shall use the best interests of the child standard and make appropriate findings.

AFFIRMED in part; REVERSED in part; and REMANDED.

EVANDER and WALLIS, JJ., concur.